## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

KENNETH STANLEY,

        Plaintiff,

v.                             Case No:  6:11-cv-1649-Orl-36TBS

LOCKHEED MARTIN CORPORATION,

        Defendant.
_____/

### ORDER

This cause comes before the Court upon Defendant Lockheed Martin Corporation's ("Defendant") Motion for Summary Judgment (Doc. 26).  Plaintiff Kenneth Stanley ("Plaintiff") filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition") (Doc. 34), to which Defendant replied ("Reply") (Doc. 37).  Upon consideration of the parties' submissions, including memoranda and accompanying exhibits, and for the reasons that follow, the Court will grant Defendant's Motion for Summary Judgment.

### I.  BACKGROUND

#### A.  Undisputed Material Facts[1]

From May 19, 1986 through June 1, 2010, Plaintiff was employed by Defendant.  Doc. 33, ¶ 1.  Defendant is a defense contractor that provides products and services to U.S. Government entities, including the Department of Defense ("DOD").  *Id.* at ¶ 7.  Defendant is an "employer" as defined by the Americans With Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA").  *Id.* at ¶¶ 3-4.  Missiles and Fire Control ("MFC") is one of Defendant's units.  *Id.*  During the relevant time, Plaintiff worked at MFC's Orlando facility.  *Id.*

---

[1] The undisputed facts are taken from the parties' Joint Stipulation of Agreed Material Facts, submitted on November 7, 2012 (Doc. 33).

In 2003, Plaintiff was diagnosed with Hepatitis C. *Id.* at ¶ 8. Plaintiff underwent aggressive chemotherapy treatment in early 2004, but experienced "chronic fatigue" and was on disability/family medical leave for several months. *Id.* In March 2004, Plaintiff was promoted to Level 5 Reliability Engineer Senior Staff. *Id.* at ¶ 9.

On December 26, 2008, a cancerous tumor was removed from Plaintiff's right thyroid. *Id.* at ¶ 10. In January 2009, Plaintiff was transferred from his position as Product Support Functional Lead on the Joint Srikefighter program to a Product Support Functional Lead position on the Infrared Search & Track ("IRST") Program. *Id.* at ¶ 11. Plaintiff's program manager on IRST was David Ragsdale ("Ragsdale"), and his functional manager was Mike Haines ("Haines"). *Id.*

On January 14, 2009, Plaintiff applied for intermittent family medical leave ("IFML"). *Id.* at ¶ 12. Dr. Mikhail Vaysberg ("Vaysberg") certified Plaintiff for IFML for an "indeterminate" period of time. *Id.* Defendant's nurse Katy Solomon ("Solomon") approved Plaintiff's IFML from January 5 through June 5, 2009. *Id.* at ¶ 13. On March 6, 2009, Plaintiff underwent his second thyroid cancer surgery. *Id.* at ¶ 15. In April 2009, Plaintiff underwent radiation therapy. *Id.* Following his March 30, 2009 return from surgery, Plaintiff took thirty-seven (37) hours IFML through June 5, 2009. *Id.* at ¶ 16.

On December 16, 2009, Plaintiff was given his 2009 performance evaluation: he was rated a "Basic Contributor." *Id.* at ¶ 17. In January 2010, Plaintiff was reassigned to the Target Acquisition Destination Sight ("TADS") Apache Fire Control program in an individual contributor role, reporting to Georgeann Lucariello and receiving daily direction from Dan Osier. *Id.* at ¶ 18. In his new position, Plaintiff's engineering level remained a 5 and his compensation did not change, but his supervisory duties were removed. *Id.*

Following his 2009 evaluation and reassignment, Plaintiff complained to his Human Resources Business Partner, Cheryl Baron ("Baron") and made an ethics complaint. *Id.* at ¶ 19. On January 5, 2010, Baron and Haines met with Plaintiff and explained the basis for his evaluation. *Id.* at ¶ 20. Ethics Officer Paul Cavaliere ("Cavaliere") investigated Plaintiff's ethics complaint. *Id.* at ¶ 21. Plaintiff told Cavaliere that he believed his poor evaluation and reassignment were due, in part, to his having been out on FMLA leave. *Id.*

In January 2010, Plaintiff submitted an Employee Request for Leave of Absence, and was approved for another IFML. *Id.* at ¶¶ 14, 22. Between January and May 2010, Plaintiff took 195 hours of leave. *Id.* at ¶ 22. In February 2010, it was reported to Baron that Plaintiff was at work fewer hours than he was reporting in the company's electronic time keeping system, known as the Salary Time Attendance Recording System ("STARS"). *Id.* at ¶ 23. The STARS system requires employees to record, to the nearest tenth of an hour, the number of hours worked daily and to charge those hours to the appropriate charge numbers. *Id.* at ¶ 25. On February 18, 2010, Baron referred the matter to Security Investigator Joe Morton ("Morton"). *Id.* at ¶ 23.

The parties agree that accurately entering time was an essential function of Plaintiff's job. *Id.* at ¶ 24. In MFC, entering time entails opening STARS on one's computer and entering hours worked on a given project next to the date/day of the week, and the daily total is automatically generated by the computer. *Id.* MFC's time reporting policy provides that "all employees are responsible for proper attendance and labor reporting daily." *Id.* at ¶ 25. Employees are warned that improper time reporting may result in disciplinary action, including termination. *Id.* at ¶ 26.

On December 12, 2008, the Federal Acquisition Regulation was amended to require that Government contractors timely disclose, in writing, any mischarging by their employees to the DOD Inspector General and to the Government Contracting Officer. *Id.* at ¶ 27. The failure to

timely report confirmed mischarging by employees could render MFC subject to Government sanctions. *Id.* at ¶ 28. Plaintiff was familiar with MFC's timekeeping policy, received annual training on it, knew employees could be disciplined for mischarging and that intentional mischarging was considered fraud, subjecting individuals and Defendant to penalties. *Id.* at ¶ 29.

In response to Baron's request for investigation, Morton reviewed Plaintiff's gate and badge records, reflecting the dates and times Plaintiff drove onto Defendant's Orlando facility and entered or exited its buildings. *Id.* at ¶ 30. Morton then compared those time records to the hours Plaintiff reported having worked for the period of February 1-17, 2010 and identified discrepancies indicating that Plaintiff had possibly mischarged 18.4 hours. *Id.* In accordance with MFC's procedure, since the discrepancy for the initial two-week review exceeded five hours, Morton conducted a 90 day review which revealed a 46.2 hour discrepancy. *Id.* at ¶ 31. Defendant's General Counsel Barton Davis ("Davis") was told about this discrepancy and ordered a six month review, which revealed a discrepancy of 109.6 hours. *Id.* at ¶ 32.

On March 1, 2010, Baron and Morton met with Plaintiff to discuss the results of the six month review. *Id.* at ¶ 33. Subsequently, Plaintiff testified that he did not recall the specifics of the conversation because he was surprised and disoriented by the data with which he was presented. *Id.* Plaintiff speculated that he may have charged his time to the wrong number, there may have been a Labor Cost Transfer error, or he may have mistakenly charged FMLA covered time to a company charge number. *Id.* at ¶ 34. Until the submission of his written response to the mischarging allegations on March 12, 2010, Plaintiff never requested an accommodation for time entry. *Id.* at ¶ 35.

Davis directed Morton to retrieve gate records for as far back as they existed. *Id.* at ¶ 36. On April 28, 2010, Morton and Baron met with Plaintiff again, providing him with a report

showing shortages of 49.7 hours for four months in 2007,[2] 129.9 hours for 2008, 225.6 hours for 2009, and 19.4 hours for 2010.  *Id.* at ¶ 37.  Morton told Plaintiff that since their first meeting, his timekeeping had been compliant.  *Id.* at ¶ 38.  Plaintiff explained that his correct timekeeping was the result of increased oversight by Osier and Lucariello, his awareness of the impact of his insomnia on his inability to concentrate, and a reduction in his medication Sythroid.  *Id.*

After the April 2010 meeting, Morton sent Plaintiff the report to review and explain discrepancies.  *Id.* at ¶ 39.  On May 13, 2010, Plaintiff identified 47 hours of discrepancies in 2008 where the report said he was not at the plant, but his records showed he was or was on business travel.  *Id.* at ¶ 40.  Morton credited him with those hours.  *Id.*  Plaintiff also questioned 36.4 hours of discrepancy between July 1 and November 13, 2008, during which he said he was telecommuting.  *Id.*  Morton credited him with the hours up to September 22, 2008, when his telecommute agreement was in place.  *Id.*  Plaintiff also argued that because there were only records for four months of 2007, 2007 should not be considered.  *Id.*  Barton agreed to exclude 2007 data, and thus only 2008 through 2010 data was considered by Defendant's Discipline Committee.  *Id.*

On May 18, 2010, Baron and Haines recommended to the Discipline Committee that Plaintiff be discharged for mischarging.  *Id.* at ¶ 41.  The Discipline Committee reviewed the case records, and decided to terminate Plaintiff's employment due to mischarging.  *Id.*

On June 1, 2010, Baron and Haines told Plaintiff that he was terminated.  *Id.* at ¶ 42.  On June 30, 2010, Plaintiff appealed his discharge.  *Id.* at ¶ 43.  On August 13, 2010, Defendant notified Plaintiff that the termination decision had been upheld.  *Id.* at ¶ 44.  On June 15, 2011, Defendant disclosed Plaintiff's alleged mischarging to the Office of the Inspector General of the

---

[2] Morton had only four months of data from 2007, due to computer problems.  Doc. 33, ¶ 37.

DOD, the Defense Contract Management Agency, and the Contracting Officer, notifying them that it would make an accounting adjustment in the amount of the overcharge. *Id.* at ¶ 45.

### B. Procedural History

Plaintiff timely filed a Charge of Disability Discrimination with the EEOC, and after receiving his right-to-sue, filed the Complaint in this action on October 13, 2011. *Id.* at ¶ 2; Doc. 1. On November 21, 2011, Plaintiff filed an Amended Complaint; alleging three causes of action for violation of: (I) the ADA; (II) the FMLA; and (III) the Florida Civil Rights Act ("FCRA").[3] Doc. 8, ¶¶ 12-52. Following discovery, Defendant filed the instant Motion for Summary Judgment on all of Plaintiff's claims. Doc. 26. On June 6, 2013, Defendant filed a Notice of Supplemental Authority regarding its Motion for Summary Judgment (Doc. 49).

### II.  **STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323.

---

[3] It is unclear whether Plaintiff, in Count I of the Amended Complaint, is alleging an ADA retaliation claim, analyzed similarly to a Title VII claim, or a disability discrimination claim, focusing on Defendant's alleged failure to make reasonable accommodation for Plaintiff's disability. *See* Doc. 8, ¶¶ 12-26. In its Opposition, Plaintiff appears to be focusing on the later. The Court will address both. *See* Doc. 26.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 248-49 (emphasis in original). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248. In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323.

## III.   ANALYSIS

### A.  Plaintiff's ADA claim

The ADA prohibits covered employers from discriminating on the basis of known physical or mental impairments of a qualified individual with a disability. 42 U.S.C. § 12112. In order to establish a *prima facie* case of ADA discrimination, a plaintiff must show that he: (1) is disabled; (2) is a qualifying individual; and (3) was subject to unlawful discrimination because of his disability. *Branscomb v. Secretary of Navy*, 461 Fed. App'x 901, 903 (11th Cir. 2012); *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). For the purposes of Defendant's Motion for Summary Judgment, the parties do not contest the first two elements. *See* Doc. 26, p. 17; Doc. 34, pp. 12-13.

However, Defendant maintains that Plaintiff cannot demonstrate the element of causation — that he was subject to discrimination because of his disability. *Id.*; *see Branscomb*, 461 Fed. Appx. at 903. ADA discriminatory retaliation is analyzed similarly to Title VII retaliation. *see*

*Branscomb*, 461 Fed. App'x at 903; *McNeely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1075-77 (11th Cir. 1996).

In moving for summary judgment on Plaintiff's ADA claim, Defendant argues that Plaintiff has not provided evidence that his reassignment or termination were the result of discrimination, and thus cannot make a *prima facie* case of discrimination based upon disability. Doc. 26. Further, Defendant maintains that the evidence shows Plaintiff's 2009 performance evaluation and reassignment, the mischarge investigation, his termination, and Defendant's disclosure to the DOD occurred due to legitimate non-discriminatory reasons and Plaintiff cannot show they were pretext for discrimination. *Id.* at p. 18.

### i.  Plaintiff's *prima facie* case of discrimination

#### 1.  Plaintiff's 2009 evaluation and reassignment

Plaintiff has failed to create a material issue of fact as to whether Defendant was aware of his alleged disability at the time of his 2009 evaluation and reassignment. Indeed, the Eleventh Circuit has affirmed summary judgment where the decision makers of an adverse employment action were unaware of plaintiff's disability. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1175 (11th Cir. 2005) (an employer cannot be liable under the ADA for firing an employee when it had no knowledge of the disability and plaintiff failed to show that the relevant decision maker knew about her alleged disability); *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996) (affirming summary judgment where employer was unaware that mental disability caused plaintiff's illiteracy). Further, neither statements revealing a general health problem nor a general appearance of being sick are sufficient to put an employer on notice of an employee's disability. *See Richio v. Miami-Dade County,* 163 F. Supp. 2d 1352, 1362-63 (S.D. Fla. 2001); *Zillyette v. Capital One Fin. Corp.*, 1 F. Supp. 2d 1435, 1443 (M.D. Fla. 1998).

Here, the record shows that Plaintiff's 2009 evaluation contained input from Haines, Plaintiff's direct supervisor Ragsdale, IRST Program Director Jerry Arlow ("Arlow"), Paul Hey ("Hey") and Pat Nelson.  Doc. 26, ¶ 37; Deposition of David Ragsdale, September 24, 2012, Doc. 28-Ex. 48 ("Ragsdale Dep."), 19:16-22; Declaration of Michael Haines, Doc. 26-Ex. 17 ("Haines Dec."), ¶ 7.  Haines testified that although he knew Plaintiff had been on FMLA leave and had undergone surgery, he only considered Plaintiff's performance in preparing his 2009 evaluation.  Haines Dec. ¶ 10.  Similarly, Ragsdale confirmed that Plaintiff's FMLA status was not a factor considered in preparing his evaluation, and those involved only evaluated the time that he was working.  Ragsdale Dep., 34:17-35:5.  Moreover, Ragsdale provided specific facts about the nature of Plaintiff's poor performance.  *Id.* at 30-40.  Further, Hey testified that, based upon his observations of Plaintiff's performance problems, he provided critical comments in Plaintiff's evaluation.  Declaration of Paul Hey, Doc. 27-Ex. 18 ("Hey Dec."), ¶ 3.  Moreover, Hey testified that during the time he was the Program Manager of the IRST Program and provided input into Plaintiff's evaluation, he did not know about Plaintiff's medical condition, including whether he had requested FMLA leave or any accommodations.  *Id.* at ¶ 4.  Similarly, Arlow testified that as IRST Program Director in 2009, he learned about Plaintiff's performance issues including missing deadlines for proposals, not completing assigned inventory tasks, and not having action items completed for the Preliminary Design Review.  Declaration of Jerry Arlow, Doc. 27-Ex. 1 ("Arlow Dec."), ¶ 3.  Accordingly, Arlow provided critical input for Plaintiff's evaluation.  *Id.* at ¶ 4.  Also, Arlow testified that until he learned of the instant case, he was unaware of Plaintiff's medical issues, including whether he had sought FMLA leave or any accommodation.  *Id.* at ¶ 5.

Plaintiff testified that after returning to work following his first surgery, he had a conversation with Ragsdale about his health issues.[4]  Deposition of Kenneth Stanley, July 10, 2012, Doc. 28-Exs. 1-2 ("Stanley Dep."), p. 113.  Plaintiff testified that Ragsdale responded by asking "Are you going to die?" to which he responded "I'm not sure."  *Id.* p. 114.  Ragsdale strongly denies that such a conversation occurred, and testified that other than hearing via email that Plaintiff had surgery, he never knew Plaintiff had thyroid cancer or the nature of his FMLA leave until preparing for his deposition in this action.  *See* Ragsdale Dep., pp. 11, 13, 38-41.[5]  To the contrary, Haines, Ragsdale, Arlow and Hey each testified that Plaintiff's poor performance provided the basis for his 2009 evaluation.  Doc. 37, p. 2.

Although Plaintiff contends that Ragsdale learned in March 2009 that he had cancer surgery, Plaintiff provides no evidence of causation between Ragsdale's knowledge and the performance evaluation he received nine months later.  Furthermore, the Eleventh Circuit has found that in the absence of other evidence of causation, three months proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation.  *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006); *Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001).

With respect to his reassignment, Plaintiff testified that following the conversation in which he was reassigned, Haines told him "I don't want you to make any noise about this or you're going to have a problem."  *Id.* at 128.  Plaintiff interpreted Haines' comment to mean do

---

[4] Although Plaintiff testified that he told two other individuals at the management level about his thyroid cancer prior to the mischarging investigation, Peter Jonacz and Patrick Miller, he has provided no evidence that they were involved in the 2009 evaluation or reassignment, or the mischarging investigation.  Stanley Dep., pp. 222-227.

[5] Indeed, Ragsdale testified that given his own sister had thyroid cancer, he would have definitely recalled if Plaintiff had told him that was what his surgery was for.  Ragsdale Dep., p. 21.

not complain about the negative evaluation or the reassignment. *Id.* However, at the time of his reassignment, Arlow testified that he was unaware of Plaintiff's medical condition and Haines testified that he only knew that Plaintiff had undergone surgery. Ragsdale Dep. p. 34, Haines Dec. ¶¶ 7, 10; Hey Dec. ¶ 4; Arlow Dec. ¶ 5.

Plaintiff has not created a genuine issue of material fact with respect to whether his alleged disability was causally related to his 2009 evaluation or reassignment. *See Celotex*, 477 U.S. at 322-23. In fact, there is no evidence that Defendant's employees knew the details of Plaintiff's medical status or the limitations it created. Even assuming Plaintiff's testimony regarding Ragsdale and Haines' comments are true, neither shows that his medical condition or alleged disability contributed to his 2009 evaluation or reassignment. Plaintiff's own assertion that he believes his negative evaluation and reassignment were not the result of poor performance, but rather of discrimination, cannot defeat summary judgment. *See Celotex*, 477 U.S. at 322-23; *Zhejiang Shaoxing Yongli Printing and Dyeing Co., Ltd. v. Microflock Textile Group Corp.*, 2008 WL 2098062, *2 (S.D. Fla. 2008) ("Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures.").

### 2. *The charging investigation and Plaintiff's termination*

The record clearly shows that concerns with Plaintiff's work triggered the mischarging investigation, and that the results of the mischarging investigation caused Plaintiff's termination. *See* Declaration of Cheryl Baron, Doc. 27-Ex. 2 ("Baron Dec."), ¶ 5.[6] Baron explained that at the time of the investigation, she did not know details about Plaintiff's medical condition, and the fact that he had taken FMLA leave previously played no part in her decision to investigate his mischarging. *Id.* In fact, Baron testified that she learned about Plaintiff's medical condition

---

[6] "In February 2010, Ms. Osier and Ms. Lucariello told me they believed Mr. Stanley was at work fewer hours than he was reporting in STARS."

in the course of her investigation, from the statement Plaintiff provided to the investigators. Deposition of Cheryl Baron, May 23, 2012, Doc. 28-Ex. 43 ("Baron Dep."), pp. 16-18.

After the initial review indicated Plaintiff had mischarged eighteen hours, MFC's General Counsel, Davis, directed a six month review, revealing a time shortage of 109.6 hours.  *See* Declaration of Barton Bolling Davis, Doc. 27-Ex. 5 ("Davis Dec."), ¶¶ 11-12.  Next, Davis requested a review of all records pertinent to Plaintiff, going back to 2006.  *Id.* at ¶ 12.  Davis affirmed that when he ordered the broader investigation, he was unaware of any of Plaintiff's medical history or past requests for FMLA leave.  *Id.* at ¶ 13.  David Klimpel ("Klimpel"), the Human Resources Senior Manager for Defendant's MFC unit, testified that the Discipline Committee, which he chaired, reviewed Plaintiff's case summary including the investigative report, Plaintiff's work history and responses, and decided to terminate plaintiff's employment solely "based on his extensive mischarging."  Declaration of David Klimpel, Doc. 27-Ex. 19, ("Klimpel Dec."), ¶¶ 5.  Klimpel affirmed that neither Plaintiff's medical condition nor his prior FMLA leave was a factor in his termination.  *Id.* at ¶ 6; *see* Deposition of David Klimpel, May 23, 2012, Doc. 28-Ex. 47 ("Klimpel Dep."), pp. 55-57 (testifying that Plaintiff's reassignment was not a demotion and that the mischarging was the sole reason for Plaintiff's termination). Similarly, Ragsdale testified that in addition to not knowing the details of Plaintiff's condition, it was certainly not a factor in the charging investigation or Plaintiff's termination.  Ragsdale Dep., pp. 11,[7] 34.  Also, Klimpel swore that the sole reason for Plaintiff's termination was his mischarging.  Klimpel Dec. ¶ 6.

---

[7] "I wasn't made aware of [Plaintiff's] medical condition in any way, other then the –when I got the materials to prepare for this deposition.  I knew he took FMLA and was approved for that, and I knew he had a surgery performed.  But I didn't connect medical condition; I wasn't aware of any medical condition that he had.  I know he was approved for FMLA for a period in 2009."

With respect to Plaintiff's termination, the record demonstrates that Baron and Haines, who recommended Plaintiff's discharge, and Defendant's Discharge Committee, learned that Plaintiff alleged he was disabled through his response to the mischarging charges.  Upon responding to the allegations, Plaintiff explained that the dosage of his synthetic thyroid medication, Synthroid, was increased in July 2009, exacerbating his insomnia and requiring him to take Ambien, which had deleterious effects on his thinking and concentration.  Doc. 28-Ex. 22, p. 2.  Plaintiff explained that while he believed his work performance was generally adequate, he did "not dispute that the side effects from [his] insomnia and regiment of treatment to fight Thyroid cancer may have caused some of the errors in [his] time entries and other work tasks."  *Id.* at 3.

Plaintiff's belief that his disability and medical conditions caused his termination is the only evidence of causation before the Court.  Plaintiff believes that the expanded temporal scope of the mischarging investigation and resulting termination were in retaliation for his taking FMLA leave.  Stanley Dep., pp. 178-180, 227-38.  However, in addition to substantial evidence that those responsible for the decision did not know details of Plaintiff's health condition, other evidence tends to disprove Plaintiff's theory of causation.  First, between December 2008 and June 2010, four other employees were discharged from MFC for mischarging, none of whom were disabled.  Klimpel Dec. ¶ 12.  Second, Defendant's uncontroverted testimony that it disclosed Plaintiff's mischarging to the DOD and refunded the amount of overcharge, tends to disprove any theory of causation.  Davis Dec., ¶ 14; *see* Doc. 27-Ex. 9 (Letter from Davis to Inspector General of DOD disclosing Plaintiff's Mischarging).  The Court agrees that it is improbable that Defendant would self-report Plaintiff's mischarging, necessitating a monetary

refund and subjecting Defendant to possible sanction, if the mischarging was not the actual cause of Plaintiff's termination.  Doc. 26, p. 20.

In the Eleventh Circuit, a factual issue must have a real basis in the record and unsupported allegations are insufficient to defeat a motion for summary judgment.  *Pace v. Capobianco,* 283 F.3d 1275, 1278 (11th Cir. 2002); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 1994).  Here, Plaintiff has failed to create a triable issue of fact regarding the causal link between the adverse employment events and Plaintiff's alleged disability.  *See Branscomb,* 461 Fed. Appx. at 903; *Stewart*, 117 F.3d at 1287.

### ii.  Defendant's legitimate, non-retaliatory reason

As discussed, the Court finds that Plaintiff has failed to establish evidence supporting the causal relationship between his alleged disability and the adverse employment events. Nevertheless, even if Plaintiff had presented triable issues of fact as to his *prima facie* case of discrimination, Defendant has clearly presented its legitimate, non-retaliatory reason for terminating Plaintiff.

Once a plaintiff has presented its *prima facie* case, a defendant has the burden to "articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Chapman v. Al Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000); *Carter v. City of Miami*, 870 F.2d 58, 584 (11th Cir. 1989).  This intermediate burden is "exceedingly light."  *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997).  Here, the Court has discussed the evidence showing that Defendant had a legitimate, non-retaliatory reason for Plaintiff's 2009 evaluation, reassignment, the charging investigation, and termination.  *See supra*, III(A)(i).  Indeed, the Eleventh Circuit has recognized that an employee's falsification of time records is a legitimate

reason for terminating an employee.  *Crawford v. Chao*, 158 Fed. App'x 216, 219 (11th Cir.

2005).

### iii.   Plaintiff's burden of showing pretext

After a defendant has articulated its legitimate reason, the burden of production shifts

back to the plaintiff to demonstrate that defendant's articulated reason for the adverse action is

merely pretext for unlawful discrimination.  *Hurlbert v. St. Mary's Healthcare System, Inc.*, 439

F.3d 1286, 1297 (11th Cir. 2006); *Munnings v. Fedex Ground Package Systems, Inc.*, 2008 WL

1849003, *21 (M.D. Fla. 2008).   The plaintiff has the opportunity to come forward with

evidence, including the previously produced evidence establishing the *prima facie* case,

sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer

were not the real reasons for the adverse employment decision.  *Chapman*, 229 F.3d at 1024-25.

If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact

regarding whether the defendant employer's articulated reasons are pretextual, the employer is

entitled to summary judgment on the plaintiff's claim.  *Id.*   Where, as here, the proffered

legitimate, nondiscriminatory reason is plaintiff's violation of a work policy, it can be found

pretextual when a plaintiff submits evidence either that he did not violate the cited policy or that

other employees who engaged in similar acts were treated differently.  *Lopez v. AT&T Corp.*,

457 Fed. App'x. 872, 875 (11th Cir. 2012).

In his Opposition, Plaintiff first "denies mischarging and believes he would have been

able to establish this fact if he had been provided with adequate time and resources."  Doc. 34, p.

15.  However, as Defendant notes, Plaintiff has not produced any evidence to support this claim,

either to Defendant in the months between being accused of mischarging and his termination, or

to this Court.  Doc. 37, p. 6.  Indeed, in his written response to the accusation from the sixth

month review, Plaintiff explained his mischarging was at least partially caused by the effects of his medical treatment, but did not deny that he had mischarged.  *See* Doc. 28-Ex. 22, p. 2.[8] Further, with respect to the larger investigation, the parties have stipulated that in April, 2010, Morton and Baron met with Plaintiff, providing him with a report showing shortages of 49.7 hours for four months in 2007, 129.9 hours for 2008, 225.6 hours for 2009, and 19.4 hours for 2010.  Doc. 33 at ¶ 37.  Plaintiff has provided no evidence that he did not mischarge 374.9 hours between 2008 and 2010.  *See Lopez*, 457 Fed. App'x at 875; Doc. 37, p. 7.

Second, Plaintiff has failed to provide any evidence that Defendant's reason was false or that discrimination was the actual reason for his termination.  *See Lopez*, 457 Fed. App'x at 875; *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).  If, as here, the proffered reason is one that would motivate a reasonable employer, the plaintiff "must meet that reason head on and rebut it" rather than "simply quarreling with the wisdom of that reason." *Alvarez*, 610 F.3d at 1265-66.  In his Opposition, Plaintiff argues that two facts suggest Defendant's improper motive: (1) Plaintiff's supervisors were not punished for his mischarging although Defendant's policy provides for disciplinary actions for both employee and supervisor; and (2) the mischarging investigation began the same day as Plaintiff's ethics complaint.  Doc. 34, pp. 15-17.

First, although Defendant's policy warns supervisors that they "may" be disciplined for their employees' mischarging, Defendant maintains that there was no reason to discipline a

---

[8] "Pursuant to your request, I have reviewed my time entries for the period of August 31, 2009 through February 18, 2010.  Unfortunately, and as better explained below, I am not able to address each entry or alleged incorrect entry with the level of specificity that you may have desired. Many entries are attributable directly to medical appointments while some are merely inadvertent errors. Notably, however, none of the errors were intentional.  In fact, I believe that any errors made by me during this time period were directly related to a disability/impairment and the regimen of treatment I have received to combat same."

supervisor in Plaintiff's case, pursuant to its policy.  Doc. 37, p. 8; *see* Supp. Baron Dec.*,* Doc. 38-Ex. 1, ¶¶ 7-8.  Here, the evidence shows that once Lucariello became suspicious that Plaintiff was mischarging, she referred the matter to Baron's review pursuant to Defendant's policy which requires a supervisor to report serious mischarging, and thus would have no reason to be disciplined.  *Id.*; *see* Doc. 34-Ex. 7 (Defendant's STARS timekeeping policy).  Further, Baron testified that no Orlando supervisor was disciplined for a subordinate's mischarging during the period when Plaintiff mischarged.  *Id.* at ¶ 9.  Given Klimpel's testimony that between December 2008 and June 2010, four other employees were discharged from MFC for mischarging, none of whom were disabled, it appears that the failure to discipline the supervisor of an employee disciplined for mischarging was typical.  *See* Klimpel Dec. ¶ 12

Second, Cavaliere, who investigated Plaintiff's ethics complaint, testified that the complaint concerned his 2009 performance review and reassignment, and was not directed against any individual.  *See* Supplemental Declaration of Paul Cavaliere, Doc. 38-Ex. 8, ¶¶ 4-5.  Although Haines was aware Plaintiff filed an ethics complaint about his performance review, he never thought it was against him.  *See* Haines Dep., pp. 34-35.  The evidence shows that Plaintiff's 2009 ethics complaint was about his performance and Haines was not the "subject", as Plaintiff posits in his Opposition.[9]  Doc. 34, p. 15.

Plaintiff has failed to demonstrate that he did not violate Defendant's timekeeping policy, or that if he did, others who did were treated differently.  *See Alvarez*, 610 F.3d at 1265-66.  The Court is not persuaded by Plaintiff's conjecture that Haines was motivated by retaliatory animus in conducting the mischarge investigation which led to his termination.  *See Celotex*, 477 U.S. at

---

[9] Moreover, the evidence indicates that Haines did not initiate the mischarging investigation. Plaintiff's supervisor, Lucariello, informed Haines that Plaintiff failed to appear for work at his new assignment on January 4, 2010 and that he was taking vacation time without prior management approval. Haines Dep., 21-22, 24-25.

322-23.  As Plaintiff has failed to meet his burden of showing that Defendant's proffered reason is pretextual, the Court will grant Defendant summary judgment on Plaintiff's ADA claim.  *See Hurlbert*, 439 F.3d at 1297; *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

### iv.  Plaintiff's ADA Accommodation Claim

From his Opposition, it appears Plaintiff is arguing that he made a reasonable request for accommodation that was denied in violation of the ADA.  Doc. 34, pp. 13-15.  Indeed, discrimination under the ADA includes "not making a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee …" 42 U.S.C. § 12112(b)(5)(A).

First, Plaintiff argues that he requested assistance in reviewing his time keeping records, an accommodation which "was perfectly reasonable and hardly burdensome."  Doc. 34, p. 14.  Plaintiff concedes that he made no specific request for accommodation before March 12, 2010, but argues that Eleventh Circuit law is "unsettled as to the precise form that a request for accommodation under the ADA must take."[10]  *Id.* (citing *United States v. Hialeah Housing Authority*, 418 Fed. Appx. 872, 876 (11th Cir. 2011)).  Also, Plaintiff argues that his FMLA usage and other information provided to Defendant prior to his reassignment should be deemed a sufficient accommodation request.  Doc. 34, p. 11.

Contrary to Plaintiff's position, the law is clear that an employee's request for accommodation must be direct, specific, and identify how it is linked to his disability.  *Hialeah Housing,* 418 Fed. Appx. at 876 ("the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made"); *Schwarz v. City of*

---

[10] Plaintiff says that after their initial meeting regarding his mischarging, he told Morton and Baron that he was ill and "on FMLA", and suggested, as an accommodation, going forward, that his supervisors review his time entries on a weekly basis.  *See* Stanley Dep., pp. 91-94; Doc. 24, p. 6.

*Treasure Island,* 544 F.3d 1201, 1219 (11th Cir.2008) ("[T]he duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have … the ability to conduct a meaningful review of the requested accommodation"). In fact, the "burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Stewart*, 117 F.3d at 1286.

Here, Plaintiff's concession that he requested the accommodation of help keeping time in response to Defendant's accusation of his mischarging eliminates a causal relationship. Indeed, the Eleventh Circuit explicitly rejects the argument that an employee is entitled to retroactive accommodation. *Wood v. Green*, 323 F.3d 1309, 1313 (11th Cir. 2003) (ADA accommodation regulations "are formulated entirely in the present tense"). With respect to the FMLA documents, Plaintiff acknowledges *Jenks v. Naples Cmty. Hosp., Inc.*, which explicitly rejects the argument that plaintiff's FMLA documents could be construed as a request for accommodation. 829 F. Supp. 2d 1235 (M.D. Fla. 2011). The *Jenks* court found that although the FMLA paperwork showed fatigue was a side effect of plaintiff's condition, the request for accommodation needed to be more specific. *Id.* at 1235.[11]

Finally, to the extent that Plaintiff testified that he requested to work part time or needed to take "fatigue time" in 2009, Baron testified that Plaintiff never submitted a work related modification request pursuant to Defendant's reasonable accommodation policy, which would have triggered a committee review of any such request. *See* Baron Dec., ¶ 15; Doc. 27-Ex. 3.

---

[11] While Plaintiff argues that the Eleventh Circuit law on this issue is "unsettled", he cites only the one case directly rejecting his argument that FMLA documents can constitute a request for accommodation, and does not cite any supportive law within the Circuit. Doc. 34, p. 14.

Furthermore, even if Plaintiff had requested such an accommodation, the record suggests that working part time would not have been necessary or reasonable. *See* Deposition of Dr. Vaysberg, August 23, 2012, Doc. 28-Ex. 51, ("Vaysberg Dep."), pp. 25-26 (indicating Plaintiff was authorized to work without restriction beginning March 30, 2009 but may need intermittent leave for speech therapy).

Plaintiff has provided no support showing that he made a good faith reasonable request for accommodation. To the contrary, by requesting help keeping time for the first time upon being confronted with his mischarging, Plaintiff necessarily did not make a sufficiently specific request before the alleged discrimination occurred. *See Hialeah,* 418 Fed. Appx. at 876*; Schwartz,* 544 F.3d at 1219*; Jenks,* 829 F. Supp. 2d at 1238.

### B. Plaintiff's FCRA claim

Count III of Plaintiff's Amended Complaint is for relief under the FCRA, Fla. Stat. Ann. § 760.10, which provides that it is unlawful for an employer to discriminate against an individual on the basis of, *inter alia*, an individual's "handicap." Fla. Stat. § 760.10(1)(a).

The analysis of an FCRA claim is identical to the one used for the ADA. *Albra v. Advan, Inc.*, 490 F.3d 826, 835 (11th Cir. 2007); *Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 925 (Fla. 4th DCA 2007) ("As applied to discrimination based on a handicap, the FCRA is construed in conformity with the federal Americans with Disabilities Act (ADA)."); *Wimberly v. Security Technology Group, Inc.* 866 So. 2d 146, 147 (Fla. 4th DCA 2004) ("Because Florida Courts construe the FCRA in conformity with the ADA, a disability discrimination cause of action is analyzed under the ADA.") Accordingly, the Court's conclusion that Plaintiff has not created a genuine issue of material fact to defeat summary judgment on his ADA claim means that Defendant is entitled to summary judgment on Plaintiff's FCRA claim. *See supra,* III(A).

### C.  Plaintiff's FMLA claim

In Count II, Plaintiff alleges that Defendant violated the FMLA by retaliating against him for seeking and taking FMLA leave and by interfering with his FMLA rights.  Doc. 8, ¶¶ 31, 33. The FMLA entitles eligible employees to take up to twelve weeks of leave during any one-year period for medical reasons, including their own serious health condition.  29 U.S.C. § 2612(a)(1). The FMLA creates a private right of action against employers who "interfere with, restrain, or deny the exercise or the attempt to exercise" FMLA rights.  29 U.S.C. §§ 2615(a)(1), 2617.

### i.  FMLA retaliation claim

In an FMLA retaliation claim, an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act.  29 U.S.C. §§ 2615(a)(2).  To succeed on a claim of retaliation, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right.  *Strickland v. Waterworks and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001).  In the absence of direct evidence of an employer's intent, the Eleventh Circuit applies the same burden shifting framework of Title VII discrimination claims to FMLA retaliation claims.  *Brungart v. BellSouth Telecomm. Inc.*, 231 F.3d 791, 798 (11th Cir. 2000).  To prove a claim of retaliation, an employee must establish that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity.  *Parris v. Miami Herald Publishing Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000); *Jirau v. Camden Dev., Inc.*, 2011 WL 2981818, *3 (M.D. Fla. 2011).  Also, a plaintiff bringing an FMLA retaliation claim faces the increased burden of showing that his employer's actions "were motivated by an impermissible retaliatory or

discriminatory animus." *Strickland*, 239 F.3d at 1207; *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000).

Defendant argues that Plaintiff cannot show a causal connection between the exercise of his FMLA rights and his 2009 evaluation, reassignment, the mischarge investigation or his termination.   Doc. 26, pp. 23-26.   Also, Defendant reiterates the legitimate, non-retaliatory reasons for each of these adverse events, arguing that they would have occurred regardless of whether or not Plaintiff exercised his FMLA rights.  *Id.* at 23.

The Court agrees that Plaintiff has not presented a genuine issue of material fact as to the causal connection between his FMLA leave and adverse employment events.  As discussed at length with respect to Plaintiff's ADA claim, the only decision makers with knowledge that Plaintiff had taken FMLA leave were Ragsdale and Haines, and each testified that Plaintiff's FMLA leave was not considered in the 2009 evaluation.  *See supra*, III(A)(i)(1).  The other employees with input in Plaintiff's 2009 evaluation and reassignment testified that they did not know about his leave at the time of their decision.  *See, e.g.* Haines Dec. ¶ 10; Ragsdale Dep., 34:17-35:5; Hey Dec., ¶ 3; Arlow Dec., ¶ 3.  The Eleventh Circuit has repeatedly held that "[a] decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart*, 231 F.3d at 799; *Strickland*, 239 F.3d at 1208.  With respect to the mischarging investigation and Plaintiff's termination, the Court has found that Plaintiff did not create a genuine issue of fact regarding whether Plaintiff's alleged disability was causally related to these events.  *See supra*, III(A)(i)(2).  Similarly, here, the unrebutted evidence shows that although the decision makers were aware of Plaintiff's FMLA leave, it was not a factor in their decision to terminate Plaintiff.  *See* Davis Dec. ¶ 5, Baron Dec. ¶ 13, Haines Dec. ¶ 10, Klimpel Dec. ¶ 6, Arlow Dec. ¶5, Ragsdale Dep., pp. 11-12, 33-35.

Moreover, even had Plaintiff presented a *prima facie* case of FMLA retaliation, Defendant proffered a legitimate, non-retaliatory reason for its actions, and Plaintiff has not created a genuine issue of fact as to whether Defendant's reason is pretextual.  *See supra,* III(A)(iii)-(iv); *Drago,* 453 F.3d at 1307; *Hairston,* 9 F.3d at 919.  Indeed, Plaintiff has presented no evidence contradicting Defendant's extensive testimony that it had a legitimate reason to believe Plaintiff was mischarging his time, investigate, and terminate him.

Plaintiff's additional argument for pretext with respect to the FMLA retaliation claim is particularly unpersuasive.  *See* Doc. 34, p. 16.  Plaintiff states that Baron "failed to mention at the disciplinary hearing the Plaintiff's FMLA status, his medical conditions of which she was fully aware, or the fact that the co-requestor for Stanley's termination had been recently accused of ethical misconduct by Stanley."  *Id.* at 16.  First, as Defendant argues, Plaintiff's FMLA status was irrelevant to the subject of the Discipline Committee.  Doc. 37, pp. 6-7.  Indeed, Plaintiff has argued that any decision maker who could have been aware of his FMLA leave was retaliating against him, and now asserts that his FMLA status should have been discussed with respect to termination.  Second, contrary to Plaintiff's argument, the Discipline Committee was clearly aware of Plaintiff's medical condition at the time of its decision to terminate.  The evidence clearly shows that the Discipline Committee had the entire investigative record, including Plaintiff's written response which contains details of his alleged disability.  *See* Baron Supp. Dec. ¶ 4; Doc. 28-Ex. 22, p. 2.  Klimpel, who oversaw Plaintiff's Discipline Committee hearing, declared that the sole reason for his termination was the mischarging, and that neither his FMLA leave nor any medical condition was a factor.  Klimpel Dec. ¶ 6.

Plaintiff has not met his burden to present credible evidence of pretext, and accordingly, the Court will grant summary judgment and dismiss Plaintiff's claim of FMLA retaliation. *See Strickland*, 239 F.3d at 1207; *Brungart*, 231 F.3d at 798.

### ii. FMLA interference claim

To state a claim that that Defendant interfered with Plaintiff's substantive FMLA rights, Plaintiff must demonstrate, by a preponderance of the evidence, that he was entitled to, but denied an FMLA right. 29 U.S.C. §§ 2615(a)(1); *Strickland*, 239 F.3d at 120-07; *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1353-54 (11th Cir. 2008). An employee need not allege that his employer intended to deny the right—the employer's motives are irrelevant. *Martin*, 543 F.3d at 1267. The FMLA does not provide relief unless the employee has been prejudiced by the violation. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Drago*, 453 F.3d at 1307 ("[E]ven where there may have been technical violations of the FMLA, those violations are not compensable where, as here, a plaintiff has failed to demonstrate that he suffered any adverse employment action.").

In the Amended Complaint, Plaintiff alleges that he sought "intermittent FMLA leave to relieve the effects of his mental impairments upon his sleep, thinking and concentration" but that his supervisor "was so hostile to [his] use of FMLA leave for this purpose that [he] could only use it very sparingly." Doc. 8, ¶ 31. In his Opposition, Plaintiff appears to clarify this allegation, arguing that Defendant impermissibly denied his FMLA leave, and refused to respect the leave by imposing burdensome duties on Plaintiff during the mischarging investigation. Doc. 34, p. 17.

Defendant maintains that there is no evidence that Plaintiff was denied FMLA leave. Doc. 37, p. 4. Solomon approved intermittent FMLA leave for Plaintiff from January 5, 2009

24

through June 5, 2009, and although Plaintiff was notified that his intermittent leave would end on June 5, 2009 and Plaintiff could have requested an extension, he did not.  Solomon Dec. ¶ 3; *see* email, Doc. 27-Ex. 27; *see also* Declaration of Gule Emran, Doc. 27-Ex. 10 ("Emran Dec."), ¶ 3. Solomon explained that Plaintiff's throat surgeon, Vaysberg, authorized an indeterminate period for Plaintiff, and represented that Plaintiff would be able to work without restriction starting March 30, 2009.  *See* Doc. 27-Ex. 28.[12]  Solomon further testified that she never denied any of Plaintiff's requests for FMLA leave.  Solomon Dec. ¶ 6.  Similarly, Vaysberg confirmed that Plaintiff would be able to return to work without restriction as of March 30, 2009, and certified intermittent FMLA leave merely to provide Plaintiff, who sang in a rock band, the opportunity to get voice therapy following the surgery.  Vaysberg Dep., pp. 11, 25-27 (testifying that although Plaintiff would be able to work without restriction after March 30, 2009, he may need to occasionally take time to attend speech therapy sessions).[13]

Following the expiration of the leave approved by Solomon, which Plaintiff did not seek to extend, Ragsdale approved 18.5 hours of FMLA leave between June 6 and December 31, 2009.  Morton Dec. ¶ 18, Ragsdale Dep. pp. 39-41.  Subsequently, after approval from Defendant, Plaintiff took an additional 195 hours of FMLA leave between January and May 2010.  Emran Dec. ¶ 4.

---

[12] In the *Return to Work/Fitness for Duty Authorization Form*, Dr. Vaysberg represented that Plaintiff would be able to work as of March 30, 2009 without any restrictions.  Doc. 27-Ex. 28. Vaysberg indicated that Plaintiff would need some continued intermittent absences for treatment of his health condition.

[13] Further, Defendant notes that Plaintiff never sought leave for voice therapy, and argues that an employer can defeat an FMLA interference claim by showing that the employee did not take FMLA leave "for the intended purpose of the leave."  Doc. 37, p. 10; *Andrews v. CSX Transp., Inc.*, 2009 WL 5176462, *6-8 (M.D. Fla. 2009).  Given Plaintiff has not provided evidence that he was denied any FMLA leave that he was requested, the Court need not address this issue.

Additionally, the record demonstrates that Plaintiff was not "discouraged" to take FMLA leave. Plaintiff testified that in February 2009, he submitted a time card with FMLA absences, and Ragsdale instructed him to "put in the time", which he interpreted as discouragement from taking FMLA time. Stanley Dep., pp. 120-121. However, Plaintiff testified that Ragsdale approved three additional FMLA weeks in March 2009, and the record shows that Plaintiff took 55 more FMLA hours between his March 30, 2009 return to work from surgery and his reassignment in December 2009, all approved by Ragsdale. Morton Dec. ¶ 18; Ragsdale Dep., pp. 39-45. Also, as Defendant notes, Plaintiff never mentioned this conversation with Ragsdale to any superior or in his 2009 ethics complaint. Doc. 26. Plaintiff concedes that he raised Ragsdale's alleged comment for the first time after his termination. Stanley Dep., pp. 125-27.

Plaintiff has provided no evidence that Defendant limited his FMLA leave, or that he was ever denied any requested FMLA leave. In fact, Defendant has provided uncontroverted evidence that Plaintiff received all of the FMLA leave that he requested. The FMLA only provides relief when the employee has been prejudiced by a violation. *Ragsdale* 535 U.S. at 89; *Drago*, 453 F.3d at 1307.

Given Plaintiff's failure to demonstrate, by a preponderance of the evidence, that he was denied FMLA rights to which he was entitled, the Court will grant Defendant summary judgment on Plaintiff's FMLA interference claim. *See* 29 U.S.C. §§ 2615(a)(1); *Strickland*, 239 F.3d at 1207; *Martin*, 543 F.3d at 1353-54.

## IV. <u>CONCLUSION</u>

For the aforementioned reasons, the Court will grant Defendant's Motion for Summary Judgment, as no genuine issues of material fact exist and there is an absence of evidence to

support the causes of action in Plaintiff's Amended Complaint.   Defendant is entitled to judgment in its favor as a matter of law.

Accordingly, it is hereby **ORDERED** and **ADJUDGED:**

1.  Defendant Lockheed Martin Corporation's Motion for Summary Judgment (Doc. 26) is **GRANTED.**

2.  The Clerk is directed to terminate any pending motions and deadlines as moot, enter judgment in favor of Defendant, and close this case.

**DONE** and **ORDERED** in Orlando, Florida on August 1, 2013.

Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel of Record
Unrepresented Parties-```